[No. H030965. Sixth Dist. May 15, 2008.]

REIKO MILLER, Plaintiff and Respondent, v.
CAMPBELL, WARBURTON, FITZSIMMONS, SMITH, MENDEL &
PASTORE, Defendant and Appellant.

## Counsel

Campbell, Warburton, Fitzsimmons, Smith, Mendell & Pastore, Nicholas Pastore and Lisa Jeong Cummins for Defendant and Appellant.

Atwood, Haiman & Westerberg and Eric S. Haiman for Plaintiff and Respondent.

## Opinion

**PREMO, J.**—Defendant Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore (Campbell Warburton) is a law firm that had represented plaintiff Reiko Miller in connection with her duties as the executor of her mother's estate. At the conclusion of that matter, Campbell Warburton requested its attorneys' fees from the probate court and was awarded all but one category of the fees it sought. The probate court's major reason for denying that one category of fees was its finding that the fees had been generated by services rendered to Miller personally, not as the executor of the estate. Campbell Warburton did not appeal the probate court's decision but initiated this action for quantum meruit to recover the fees directly from Miller.[1]

The trial court granted Miller's motions in limine to exclude all evidence, which resulted in dismissal of the case. There were two grounds for the trial court's ruling. First, the trial court held that the claim was barred by the final judgment in the probate case. Second, the trial court concluded, based upon the evidence submitted in connection with the in limine motions, that Campbell Warburton could not prove its quantum meruit claim. Campbell Warburton appeals from the resulting judgment. For reasons we shall explain, we reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. *The Probate Proceedings*

Miller's mother, Ruby Taniguchi, died on August 28, 1988. Her will named Miller and Miller's brothers, Rick and Ron Taniguchi, as beneficiaries. The will was admitted to probate on December 12, 1990; the decree of final distribution was filed 14 years later on January 18, 2005.

Miller was initially the sole executor of the will and Campbell Warburton represented her. On January 15, 1993, the probate court entered an order of preliminary distribution, which, among other things, allowed Campbell Warburton a partial statutory fee of $10,000 from estate funds. In 1999, the probate court added Ron and Rick Taniguchi as co-executors.

---

[1] Although we would ordinarily think of the fee claimant as the plaintiff, in this case, as a result of the statutory procedure prescribed for attorney fee disputes (Bus. & Prof. Code, § 6204, subd. (c)), the claimant (Campbell Warburton) is the defendant and the party resisting the claim (Miller) is the plaintiff.

One issue that arose during administration concerned a parcel of real property known to the parties as the El Dori property. Miller had held title to the El Dori property along with her mother and her father. Many years earlier Miller had pledged her share of the El Dori property as collateral for a loan from her father. Miller eventually repaid the loan. Her father died sometime thereafter. Miller's name was never removed from the title; title to the property remained in Miller and her parents. When the El Dori property was sold through probate of her mother's will in 1991, Miller personally collected her one-third interest, approximately $81,000, from the proceeds of its sale.

In 2001, Miller filed a second account and report to which her brothers objected. The brothers challenged, among other things, the $81,000 Miller had received from the sale of the El Dori property. They claimed that Miller had released her interest in El Dori when she pledged it as collateral for the loan. Trial on these objections was set for July 2002. Very shortly before trial was set to begin, Miller fired Campbell Warburton and retained the firm of Atwood, Haiman & Westerberg. After several continuances, trial was held on January 27, 2003. The probate court resolved the El Dori issue in favor of Miller.

On May 7, 2004, the three co-executors filed a petition for final distribution. Anticipating that Campbell Warburton would submit a claim for attorneys' fees beyond the $10,000 it had been awarded in 1993, the petition asked the probate court to deny the claim. The reason for the request was that Campbell Warburton had allegedly been negligent in advising Miller and in allowing the estate to remain open for over a decade, that the firm had no fee agreement with any of the co-executors, and that it had an undisclosed conflict of interest that barred any claim for fees. The co-executors also stressed that, as of 1999, they had agreed that Campbell Warburton would no longer represent the executors or the estate, that each co-executor now had separate counsel, and that all attorneys' fees owed by each co-executor would be paid by the respective co-executor and not out of estate assets.

Campbell Warburton filed an objection to the petition and requested its statutory fees ($27,842.27), costs ($1,018.75), and extraordinary fees ($59,492.50). Campbell Warburton separated the extraordinary fees into two categories: fees for the management and sale of real property ($19,307.25) and fees for the "defense of executor" ($40,185.25). The latter category represented the fees generated in defending Miller against her brothers' objections to the second account, which had largely involved defending Miller's interest in the El Dori property.

The probate court awarded Campbell Warburton a total of $38,168.27. Although the written order does not break down the award, the amount awarded is the sum of all the fees Campbell Warburton requested as statutory fees, costs, and extraordinary fees for the management and sale of real property, less $10,000, which was the amount of the partial payment awarded to Campbell Warburton in 1993. Impliedly, therefore, the probate court did not award Campbell Warburton the $40,185.25 it had requested as fees for "defense of executor." The probate court's oral ruling clarified the basis for the award: "I believe that the fees requested regarding management and sale of real property are reasonable and the services were to the direct benefit of the estate. I believe that they [Campbell Warburton] should receive a total compensation for extraordinary fees for the management and sale of real property of $19,307.25. [¶] As to the remaining request for extraordinary fees, they are denied for any number of reasons, but the major reason in my mind is these fees are—these services were expended for the benefit of Ms. Miller in her private capacity largely to defend the claim regarding the disputed one/third interest in the El Dori property. It's very hard for me to separate the request for the other fees from this driving dynamic of what do we do with the one/third interest in the El Dori property. And I notice in the declarations I received that the lion's share of that request for extraordinary fees is really for the El Dori property. As I said, I believe those services were rendered and the fees incurred by Ms. Miller in her private capacity, not as a representative of the estate."

## B.  *Proceedings in the Instant Matter*

Campbell Warburton did not appeal the probate court order but turned directly to Miller, claiming a quantum meruit right to the fees the probate court denied. Miller opted for nonbinding arbitration (Bus. & Prof. Code, § 6201) and the arbitrator held in favor of the attorneys. Miller rejected the award and commenced this action in the superior court. (*Id.*, § 6204, subd. (c).)

Immediately prior to trial, Miller filed a group of motions in limine. Two are pertinent here. The first was a motion to exclude all evidence of services rendered on the ground that Campbell Warburton's claim was an impermissible collateral attack on the final judgment of the probate court, that it was barred by the doctrines of collateral estoppel and judicial estoppel, and that it was a violation of the Rules of Professional Conduct (the "collateral estoppel" motion). The second motion sought to exclude all of Campbell Warburton's evidence on the ground that Campbell Warburton could not prove an essential element of its quantum meruit claim, namely that both parties had expected Miller would be personally liable for the fees (the "lack-of-expectations" motion).

Over the next two days the parties filed competing declarations and excerpts of material from the probate matter. The trial court conducted a hearing on August 24, 2006. No testimony was taken. The trial court expressed the view that the motions were, in effect, motions to dismiss the case. After hearing argument, the trial court granted both motions. As to the collateral estoppel motion, the court reasoned that fees incurred as part of the administration of the estate are not chargeable to the executor personally and, if Campbell Warburton was unhappy with the amount awarded, it should have appealed from the order of the probate court. In granting the lack-of-expectations motion, the court held that Campbell Warburton could not prove its quantum meruit claim because neither Miller nor Campbell Warburton had any expectation that Campbell Warburton's services were "being rendered to, and were to be personally paid by, [Miller] in her individual (as opposed to her fiduciary) capacity." Campbell Warburton's motion for reconsideration was denied on November 15, 2006, and judgment was entered that day. The trial court later granted Miller's attorneys' fees motion.

Campbell Warburton has filed a timely notice of appeal, challenging both substantive rulings and the award of attorneys' fees. Because we conclude that the trial court erred in granting both in limine motions, we do not reach the attorneys' fees issue.

## II. DISCUSSION

### A. *Standard of Review*

The instant case was decided by in limine motions. The collateral estoppel motion, which alleged that Campbell Warburton's claim was barred by the prior decision of the probate court, was akin to a motion for judgment on the pleadings. (Code Civ. Proc., § 438.) Like a general demurrer, a motion for judgment on the pleadings tests the sufficiency of the complaint to state a cause of action. (*Wise v. Pacific Gas & Electric Co.* (2005) 132 Cal.App.4th 725, 738 [34 Cal.Rptr.3d 222].) "The court must assume the truth of all factual allegations in the complaint, along with matters subject to judicial notice." We review judgments on the pleadings de novo. (*Ibid.*; see also *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 28 [61 Cal.Rptr.2d 518].)

The lack-of-expectations motion was, in effect, a motion for summary judgment or for nonsuit. We have recently expressed our disfavor of these substitutes for trial or for statutory motions that test the factual basis for a

claim, noting the risk they pose to fair adjudication of factual issues. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582 [71 Cal.Rptr.3d 361].) As we stated in *Amtower*, "when the trial court utilizes the in limine process to dispose of a case or cause of action for evidentiary reasons, we review the result as we would the grant of a motion for nonsuit after opening statement, keeping in mind that the grant of such a motion is not favored, that a key consideration is that the nonmoving party has had a full and fair opportunity to state all the facts in its favor, and that all inferences and conflicts in the evidence must be viewed most favorably to the nonmoving party." (*Id.* at p. 1595.)

Miller suggests that the substantial evidence standard should apply here because, according to a statement in the trial court's order, the ruling was based upon stipulated facts. But even where the nonmoving party has stipulated to the facts, we independently scrutinize the granting of this type of in limine motion without deference to the trial court's conclusions. (*Stein-Brief Group, Inc. v. Home Indemnity Co.* (1998) 65 Cal.App.4th 364, 369 [76 Cal.Rptr.2d 3].) That is because, whether we consider the procedure analogous to a motion for nonsuit or a motion for summary judgment, the trial court was not asked to make a factual finding, which is the type of ruling we review for substantial evidence. Rather, in the nonsuit context, the trial court must accept as true the evidence most favorable to the plaintiff, indulging every legitimate inference in the plaintiff's favor. (*Espinosa v. Little Co. of Mary Hospital* (1995) 31 Cal.App.4th 1304, 1313 [37 Cal.Rptr.2d 541].) On review, reversal is warranted if there is some substance to the plaintiff's evidence upon which reasonable minds could differ. (*Ibid.*) Similarly, on appeal from summary judgment, we review the record de novo to determine whether the trial court was correct in concluding that there was no triable issue of fact. (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438 [111 Cal.Rptr.2d 534].) Thus, even if there is substantial evidence to support the trial court's decision, if there is a conflict in the evidence, then we must reverse to allow a trial of that evidentiary conflict.

B.   *The Collateral Estoppel Motion*

The trial court's order granting the collateral estoppel motion stated: "As the California Supreme Court explains . . . in *Estate of Kelleher* (1928) 205 Cal 757, 763 [272 P. 1060]: 'The fees for attorney's services being a proper expense of administration are payable like the other expenses of administration, and are not a personal charge against the executor.' [¶] . . . [¶] Thus, if

an attorney for the executor or administrator is dissatisfied with the amount of fees awarded him by the Probate Court upon final distribution, 'his remedy is on the probate order, not against the administrators upon an alleged quantum meruit.' *Hatch v. Bush* (1963) 215 Cal.App.2d 692, 705 [30 Cal.Rptr. 397]. See also *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448 [77 Cal.Rptr.2d 463]. [¶] No authority has been cited by [Campbell Warburton], and none has been found by the court, that abrogates or annuls this long-standing rule."

Campbell Warburton argues that this decision does not take into account that it is seeking fees that the probate court found were *not* an expense of administration because the fees were generated by services rendered to Miller in her individual capacity. Campbell Warburton has accepted that finding; it is not attacking the probate court's order.

Miller's argument reflects the trial court's reasoning, which is that there is no law that would allow an attorney to recover from the executor personally for "services that were rendered to her in her representative capacity." The argument, like the trial court's order, skirts the issue, which is whether the probate court's fee award precludes the attorneys from recovering from the executor personally for services that were rendered to her in her *individual* capacity. We begin our review of that issue with a brief discussion of the underlying Probate Code provisions.

■ A probate court must order compensation out of estate assets for routine probate services rendered by an executor's attorney. (Prob. Code, §§ 10800, 10810.) Services that are not involved in the typical probate case, commonly known as "extraordinary services," may be paid out of estate assets at the discretion of the probate court. (*Estate of Hilton* (1996) 44 Cal.App.4th 890, 894–895 [52 Cal.Rptr.2d 491]; Prob. Code, § 10811.) Attorneys' fees that are properly considered an expense of administration, whether routine or extraordinary, are payable only out of the estate and are not a personal charge against the executor. The attorneys' sole remedy must be obtained from the probate court. (*Hatch v. Bush, supra*, 215 Cal.App.2d at p. 705.)

■ The executor or personal representative[2] of an estate has the power, among others, to, "[d]efend actions and proceedings against the decedent, *the personal representative*, or the estate." (Prob. Code, § 9820, subd. (b), italics

---

[2] The "personal representative" is the person or firm appointed by the probate court to administer the probate of a decedent's estate. (*Estate of Hilton, supra*, 44 Cal.App.4th at p. 894, fn. 1.) The personal representative may be the executor, who is the person named as such in the decedent's will, or it may be the successor to the executor, or an administrator appointed by the court where the decedent died without a will naming an executor. (*Ibid.*) In this opinion, we use the terms "executor" and "personal representative" interchangeably.

added.) Although this section gives the executor the power to defend actions brought against her, it does not give her the right to defend her personal interests at the expense of the estate. As clarified by the Law Revision Commission comments following section 9820, "The authority in subdivision (b) [of section 9820] for defense of actions and proceedings against the personal representative refers to actions and proceedings against the personal representative in his or her representative capacity, not those against him or her individually." (Cal. Law Revision Com. com., 53A West's Ann. Prob. Code (1991 ed.) foll. § 9820, p. 621.) Thus, the executor may not look to the estate to compensate an attorney who has represented her in her individual capacity. Moreover, since the power of the probate court extends only to the property of the decedent (*Estate of Lee* (1981) 124 Cal.App.3d 687, 692 [177 Cal.Rptr. 229]), the probate court has no power to order the executor to personally compensate the attorney in such a situation. Based upon these general rules, Campbell Warburton maintains that it must seek its remedy from Miller directly since, as the probate court expressly concluded, the fees were generated by services rendered to her personally.

Miller urges us to ignore the probate court's reason for denying the fee request because, she says, there was no evidence of the probate court's reasoning before the superior court when it ruled on the in limine motion. As set forth above, the probate court's written order does not specify its reasons for denying the "defense of executor" category of fees but the transcript of the probate proceedings does. The fact that the transcript was not part of the record before the superior court when it ruled on the in limine motion merely highlights our misgivings about the use of in limine motions.

Trial was initially set to begin on Monday, August 21, 2006. When Monday, August 21, arrived, the parties were told that trial was postponed to Thursday. Miller filed her in limine motions the next day. She served supplemental points and authorities in which she first challenged Campbell Warburton's characterization of the probate court's reasons for denying the fees late Thursday morning, two and one-half *hours* before the hearing to be held that afternoon. No oral testimony was taken at the hearing.

At the hearing on the motions in limine, Campbell Warburton argued the personal-interest basis for the probate court's ruling, noting that counsel recalled the probate court's having made that express ruling at the hearing. Counsel explained that the transcript of the probate court hearing was unavailable because the court reporter was in France. Miller's counsel disputed his opposing counsel's recollection of the probate court's ruling and urged the trial court to rely solely upon the face of the probate court's order, which simply awarded Campbell Warburton $38,168.27. The trial court granted Miller's motions based upon the papers submitted in the preceding

two days. Campbell Warburton finally submitted a copy of the relevant portion of the transcript in reply to Miller's opposition to its motion for reconsideration. The transcript was signed by the court reporter only one day prior to the date Campbell Warburton submitted it.

We conclude from the foregoing that Campbell Warburton did not submit the transcript immediately in response to the motions in limine simply because it could not obtain it in the two and one-half hours it had to do so. To ignore it now would merely exacerbate the insult caused by such hasty adjudication of the issue. Thus, although the trial court did not have benefit of the probate court's stated reasons, we do, and there is no legal impediment to our considering them in the course of our de novo review. (*Earhart v. William Low Co.* (1979) 25 Cal.3d 503, 508, fn. 4 [158 Cal.Rptr. 887, 600 P.2d 1344] ["Although a trial judge's opinion may not be used to impeach a finding, it may be referred to for the purpose of determining the process by which he reached his conclusion and as an aid in interpreting findings where necessary."]; see also *Estate of McAfee* (1960) 182 Cal.App.2d 553, 555–556 [6 Cal.Rptr. 79].) Indeed, the evidence is necessary to a just analysis of the issue before us.

Considering the transcript of the probate hearing along with the implications gleaned from the probate court's written order, we conclude that the probate court fee award excluded only the category of fees Campbell Warburton had designated as fees for "defense of executor" and that the probate court found that those fees were incurred for representation of the executor in her individual capacity. It follows that the probate court did not decide that Campbell Warburton was not entitled to the fees but only that the fees were not payable out of the estate.

We now turn to the trial court's ruling in this case. Although the trial court did not expressly state the theoretical basis for its ruling, the ruling may be interpreted as concluding that the quantum meruit claim was an impermissible collateral attack on the probate court order and barred by the doctrines of collateral estoppel or res judicata. These concepts, however, are inapplicable. This inapplicability is best demonstrated by analyzing the case Miller cites in support of the court's order, *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011 [43 Cal.Rptr.2d 717] (*Bell*).

In *Bell*, a Nevada court had denied an attorney's quantum meruit claim for fees in a personal injury matter, finding that the attorney had waived his right to the fees. (*Bell, supra*, 36 Cal.App.4th at p. 1018.) The attorney later filed a separate action in California seeking a judicial declaration of his entitlement to the fees, insisting that the Nevada court had lacked jurisdiction to make such a determination. The appellate court in the California case agreed that

the Nevada court had acted in excess of its jurisdiction but that the attorney was barred under any one of three theories from relitigating the issue. (*Id.* at p. 1022.) The attorney was estopped from attacking the Nevada court's jurisdiction in light of the fact that the attorney had filed his claim in that court, had affirmatively represented to that court that he had not waived the claim, and had appeared generally in the proceedings. (*Id.* at p. 1023.) His failure to appeal the order weighed against permitting a collateral attack on the order even though it had been entered in excess of the court's jurisdiction. (*Id.* at p. 1024.) And the doctrine of res judicata precluded relitigation of the issue. (*Id.* at p. 1026.)

██ That *Bell* does not control the result here is obvious. Campbell Warburton's claim in this case is not a collateral attack on the probate court's order. A collateral attack on an appealable order seeks invalidation of the order, as by showing that the court acted without or in excess of its jurisdiction. (*Estate of Lee, supra,* 124 Cal.App.3d at p. 692.) Unlike the attorney in *Bell,* Campbell Warburton is not challenging the probate court's jurisdiction to make the order it made, which is that the estate should not bear the expense of the fees generated in defense of Miller. Campbell Warburton argues only that the probate court lacked the jurisdiction to make the order it seeks here, which is that Campbell Warburton is entitled to fees directly from Miller. The probate court never ruled upon that question.

██ Because the probate court did not rule upon the question raised in this case, the doctrines of res judicata and collateral estoppel are likewise inapplicable. Res judicata precludes parties from relitigating an issue that has been finally determined by a court of competent jurisdiction. (*Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1226 [128 Cal.Rptr.2d 742].) There are three elements to a res judicata defense: (1) The issue decided in the prior adjudication is identical to the issue in the present action; (2) there was a final judgment on the merits of that issue; and (3) the party against whom the doctrine is asserted was a party to or in privity with a party to the prior adjudication. (*Ibid.*) ██ "A sister doctrine of res judicata is collateral estoppel, under which a prior judgment between the same parties operates as an estoppel as to those issues actually and necessarily decided in the prior action." (*Ibid.*) In *Bell,* the plaintiff raised exactly the same issue in both cases so that the claim in the second case was barred by the court's decision on the merits in the first case. Here, the issue—whether Miller should be held personally liable for services rendered for her personal benefit—was never decided by the probate court. Thus, there is no prior adjudication on the merits to bar Campbell Warburton's claim in this case.

Miller cites several cases holding that an attorney's only remedy, when dissatisfied with a probate court's fee award, is to appeal from the probate

court order. (See, e.g., *Estate of Gilkison, supra,* 65 Cal.App.4th 1443, 1450, fn. 5; *Hatch v. Bush, supra,* 215 Cal.App.2d at p. 703.) But appeal of the probate court order would have been meaningless since Campbell Warburton does not challenge that order or the probate court's conclusion that the fees it did not award were generated for the defense of Miller personally. Miller's authority is, therefore, inapplicable.

It is true that Campbell Warburton cites no cases in which an executor's attorney has been allowed to collect fees from the executor personally for services rendered to the executor in her individual capacity. Miller characterizes this omission as the absence of authority to award "extraordinary fees against the personal representative in his/her individual capacity." But again, Campbell Warburton is not seeking "extraordinary fees" for services to the estate. Campbell Warburton is seeking compensation for legal services rendered to Reiko Miller as Reiko Miller. There are certainly cases in which an executor obtains legal services that cannot be paid from estate assets and for which the executor is personally liable. Indeed, the co-executors in the underlying probate case each employed separate counsel and paid for those services personally. Another example arises in will contests. When defense of a will contest would benefit only the executor, it is inequitable to charge the estate for legal services rendered in that defense since that enables the executor to subject the whole estate to expenses incurred by him for his sole benefit. "While [the executor] undoubtedly had the legal right under our statute to defend the will in his capacity as executor [citations], if such defense was solely for his own benefit as a devisee and legatee and could not operate beneficially as to any other person interested in the estate, he must bear the costs and charges of maintaining it." (*Estate of Higgins* (1910) 158 Cal. 355, 358–359 [111 P. 8].) Similarly, *Whittlesey v. Aiello, supra,* 104 Cal.App.4th at page 1231, which involved trust litigation, held, "counsel must seek compensation from the parties who stand to gain from the litigation, not the trust."

■ Since the probate court expressly found that the fees for the "defense of executor" had actually been for services rendered to Miller personally, the probate court's order refusing to award those fees out of estate assets does not bar Campbell Warburton's claim in this case.

### C. *The Lack-of-expectations Motion*

Having concluded that Campbell Warburton is not estopped from prosecuting its quantum meruit claim against Miller, we now consider the factual issue raised by the second in limine motion.

■ "Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.' " (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458 [9 Cal.Rptr.3d 693, 84 P.3d 379].) The burden is on the person making the quantum meruit claim to show the value of his or her services and that they were rendered at the request of the person to be charged. (*Hocker v. Glover* (1931) 113 Cal.App. 152, 157 [298 P. 72]; *Earhart v. William Low Co., supra,* 25 Cal.3d at p. 515.) On the other hand, a defense that the work was performed under a special contract is affirmative in character and the recipient of the services has the burden of proof. (*Roche v. Baldwin* (1904) 143 Cal. 186, 189 [76 P. 956].) Likewise, unless the parties are near relatives, the recipient of the services has the burden to prove the defense that the services were rendered gratuitously or without obligation on his part to pay. (*Sowash v. Emerson* (1916) 32 Cal.App. 13, 18 [161 P. 1018].)

The gist of Miller's motion in limine was that the parties had a mutual understanding that Campbell Warburton would be paid out of the estate or not at all. This is undoubtedly an issue of fact. (See *Hutchinson v. Gertsch* (1979) 97 Cal.App.3d 605, 614 [159 Cal.Rptr. 40].) Yet the issue was decided in a very perfunctory manner. As we explained above, Campbell Warburton was given two days between notice and hearing to prepare and deliver its evidence in written form. No oral testimony was taken. Although Miller argues that Campbell Warburton had "stipulated" to the facts, Miller does not contend that Campbell Warburton stipulated that it had presented a comprehensive offer of proof. To the contrary, it seems that the hasty adjudication of this case prevented Campbell Warburton from submitting some of the evidence it did have. Furthermore, the abbreviated in limine proceedings did not allow Campbell Warburton the opportunity to cross-examine Miller, whose statement of the facts was the primary basis for the trial court's ruling. In short, the process deprived Campbell Warburton of a full and fair opportunity to present its case.

Miller stressed at oral argument that Campbell Warburton participated in the in limine proceedings without objection and, therefore, waived its right to submit any additional evidence. The record, however, paints a different picture. Campbell Warburton objected to Miller's lack-of-expectations motion as untimely, resulting in surprise and prejudice. Campbell Warburton also objected on the ground that the factual issue was entitled to a trial. In its written opposition to the lack-of-expectations motion, Campbell Warburton argued: "Miller is attempting to improperly use a pre-trial motion to argue a

question of fact, for which all evidence should be presented to the trier of fact to determine if [Campbell Warburton's] claim for fees and costs, pursuant to a theory of quantum meruit, is justified. This is not a question of law to be determined by the Court before trial begins, but a question of fact for the Court, as the trier of fact in this matter, to determine after each side has presented its evidence." Thus, it is clear that Campbell Warburton did not participate in the process without objection. In any event, viewing the evidence in the light most favorable to Campbell Warburton, we detect a factual dispute that deserved to be tried.

Miller's declaration in this case stated that she never expected to have to pay personally for Campbell Warburton's services. She claimed that Attorney Warburton (who died in 1995) had told her that he would be representing her "solely as the personal representative" of the estate and that all attorneys' fees would be paid out of the estate. She maintained that none of the other attorneys who worked on the file ever discussed the fee issue with her, asked if she wanted them to represent her personally, or differentiated among the various objections her brothers had raised. In an undated deposition, one of the Campbell Warburton attorneys admitted that he never "specifically" discussed billing issues with Miller. Miller stated, "At all times, they told me that they were representing me solely as the personal representative of the estate." Thus, Miller's evidence would support a finding that the parties did not expect Miller would be personally liable for the fees. Yet Campbell Warburton submitted evidence that raises a contrary inference.

In her first declaration filed in support of the petition for final account in the probate case Miller stated that when her brothers became co-executors in 1999, "neither they nor I ever agreed that [Campbell Warburton] would continue serving as the attorneys for the estate." One brother confirmed that the co-executors had agreed in 1999 that Campbell Warburton would "not continue being the attorney for the executors and/or for the estate." At trial in the probate matter Miller testified that she had relied upon Campbell Warburton to handle the El Dori dispute and that she did not terminate her relationship with Campbell Warburton until July 2002. If the co-executors had agreed in 1999 not to engage Campbell Warburton as counsel for the executors or the estate, one might conclude from Miller's trial testimony that she understood that Campbell Warburton's services after 1999 were directed to her in her individual capacity.

Further, there is evidence from which one might draw the inference that Miller also understood she would have to pay for these personal legal services out of her own pocket. The record contains a letter to Miller from Campbell Warburton attorney Nicholas Pastore dated October 2002, in which Pastore explained that the firm would be seeking to recover its extraordinary

fees for the time spent on issues "exclusive of the claims of Ron and Ricky." Pastore went on, "Additionally, as I indicated I would recently and back in July 2002, my best approximation at this time, is that this firm has expended approximately $36,000 in time spent and costs relative to the claims of Ron and Ricky." Pastore told Miller that the firm would argue that those fees were also recoverable from the estate; however, should the probate court disagree, "your personal exposure to this office, relative to your defense, is approximately $36,000."

Miller's communications with Campbell Warburton were not confined to a few letters or phone calls from counsel. Miller had actually worked in the firm's law offices from late 2000 until March 2002. Pastore's letter, and Miller's employment relationship with the firm, could support the inference that she had a greater understanding of her potential liability than that which she described in her declarations. The inference is strengthened when viewed along with the following evidence that was also before the trial court.

A partial transcript from the probate proceedings contains a series of questions and answers in which the questioner, who appears to have been trying to show that the "defense of executor" fees were not an expense of administration, asked Miller, "Was Mr. Haiman, as Campbell Warburton was, representing your interest in 759 North Fifth and El Dori?" Miller answered, "Yes." She was then asked, "Was one of the reasons you took this issue to trial to preserve your interest in 759 North Fifth and El Dori?" Miller replied affirmatively. Miller then admitted that she paid Haiman for his services defending her in the El Dori matter out of her own pocket. Indeed, in urging the probate court to deny fees to Campbell Warburton from estate assets, the petition for final distribution made the point that attorneys' fees incurred by each of the three executors were being paid by the executors personally. "Any unpaid attorneys' fees owed by each Co-Executor to his/her respective attorney will be paid by the respective Co-Executor and not by the Estate." One could reasonably infer from all of this that Miller understood that defense of the El Dori matter was for her personal benefit and that she would have to pay for those services personally.

In light of the evidence we conclude that the trial court erred in holding that the evidence was insufficient, as a matter of law, to support Campbell Warburton's quantum meruit claim.

### III.   DISPOSITION

The judgment is reversed.

Rushing, P. J., and Elia, J., concurred.