Filed 3/16/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JOHN CLARKE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JIN-QUAN YU et al., <br><br> Defendants and Respondents. | D085636 <br><br><br> (Super. Ct. No. 37-2023-00019476-CU-BC-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge.  Affirmed.

Simpson Thacher & Bartlett, Stephen P. Blake and Jonathan C. Sanders, for Plaintiffs and Appellants.

Keker, Van Nest & Peters, R. James Slaughter, Bailey W. Heaps and Niharika Sachdeva, for Defendants and Respondents.

The parties, a venture capitalist and two scientists who had worked together on past companies, discussed and took steps toward forming a new company—CHange Pharma, Inc.—to develop and commercialize carbon-hydrogen bond activation, known as C-H activation, technology.  When disagreements arose over the amount of initial funding needed, the scientists ultimately obtained funding from other sources.

Plaintiffs CHange and John Clarke, the venture capitalist, appeal the summary judgment entered in favor of Defendants Jin-Quan Yu and Benjamin Cravatt, the scientists. We conclude summary judgment was proper on all claims asserted against Defendants.

The claims for breach of oral and implied joint venture agreement are barred as a matter of law by the statute of frauds. Plaintiffs contend the statute of frauds does not apply to either oral or implied joint venture agreements. Yet Plaintiffs offer no caselaw, and we are aware of none, that categorically exempts oral or implied joint ventures from the statute of frauds. We publish this opinion to clarify that an oral or implied joint venture agreement is subject to the statute of frauds if the agreement, by its terms, cannot be performed within a year from its making. (Civ. Code, § 1624, subd. (a)(1).) Here, Clarke himself testified "the purpose of the joint venture" was "to develop and ultimately commercialize" Yu's C-H activation technology. Defendants and a nonparty scientist involved in CHange attested it was not possible to develop this technology in less than one year. Clarke's uncorroborated and self-serving declaration that CHange "could also have (and did) develop Yu's technology in . . . less than a year"—unmoored from his proffered experience or any record evidence—does not create a genuine issue of fact sufficient to defeat summary judgment. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*).)

The breach of fiduciary duty claim hinges on a duty arising from an enforceable joint venture agreement, so it falls with the joint venture claims.

Summary judgment was also proper on the promissory estoppel claim. The promises Plaintiffs identify are either unenforceable, not grounds for establishing promissory estoppel given the bargain involved, or not clear and unambiguous.

2

Finally, as for the quantum meruit claim, caselaw indicates plaintiffs must perform the at-issue services based on the expectation the defendants would compensate them.  (E.g., *Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore* (2008) 162 Cal.App.4th 1331, 1344 (*Miller*).)  Because Plaintiffs concede Clarke expected compensation "in the form of his interest in CHange, rather than payment from [Defendants]," summary judgment in Defendants' favor was appropriate.

We thus affirm.

## I.

## A.

Clarke is a venture capitalist who describes himself as a "sophisticated investor" and an "experienced early stage investor."

Defendants work at The Scripps Research Institute, a nonprofit, publicly funded biomedical research institution.  Yu is a chemistry chair and professor at Scripps whose research "focuses on the unexpected discovery of new reactions through . . . C-H activation."  Cravatt is a chemical biology chair at Scripps whose research "focuses on discovering novel therapeutic targets and drugs to treat disease."

In 2011, Cravatt, Clarke, and others worked together on Abide Therapeutics, which was acquired by another company in 2019.

In 2014, Defendants, Clarke, and others founded Vividion Therapeutics, Inc., which was acquired by another company in 2021.

## B.

In December 2021, Clarke contacted Yu to arrange a time to meet to "catch up" and "perhaps . . . discuss some new company ideas!"  Yu responded that he was looking forward to catching up and was "so excited about my next company focusing more on our C[-]H activation chemistry!"

In January 2022, Yu e-mailed Clarke to describe his vision for "this new company." He explained his desire for it to be "THE company of C-H activation technology, like Apple for [iP]hone, IBM for chips." Yu expressed his wish to "develop [a] full range of technologies in the long run." Consequently, the model he wanted to follow was "very different from one biological discovery" or "a one[-]product based chemical company." Instead, Yu wanted to "get renewable funding to continuously lead the field and develop [a] new generation of technologies." The next day, in a separate e-mail thread, Clarke told Yu he "couldn't agree with you more about the potential for your technology and our new company as you said in your email last evening- 'The Apple' or 'IBM' of the Pharmaceutical industry."

That same month, Clarke contacted an intellectual property attorney about working on "patenting strategy and execution" and mentioned he was "reaching out" to Scripps "to get the licensing/research collaboration agreement in process ASAP."

By February, the company was being referred to as CHange Pharma, Inc.

In mid-March, Clarke met separately with Defendants, during which time he claims they orally agreed to a joint venture regarding CHange.

In June, Clarke, on CHange's behalf, entered into a confidential disclosure agreement with Scripps to "contemplate substantive business discussions regarding 'C[-]H activation tech[nology]' and a potential business relationship."

Over the ensuing months, Clarke sent Yu and sometimes Cravatt various iterations of capitalization tables outlining different equity distributions in CHange. Yu expressed to someone at Scripps that Clarke's "[f]irst round of proposal," which allocated 30% equity in exchange for a

4

$3 million investment, was "far from [Yu's] expectation," as he expected a total of $6 million from the first investment round. Soon after, Yu e-mailed Clarke about needing "substantial investment in the first two years."

While Clarke originally offered to invest $3 million in CHange, that number eventually increased to $4 million. In deposition, Cravatt theorized $4 million might have "been enough" had the scope of the company been narrower, but early on he "didn't understand . . . what type of company [Yu] wanted to build."

By the summer, Clarke understood that Defendants did not consider his proposed financing "sufficient." For example, in June, Yu messaged Clarke that Cravatt had reservations about the "financing side" of the company, so "we should stick to the early plan between [Defendants] for seed fund of 10 million" because "we will be very tight with 4 [million]." Yu suggested "ask[ing] other investors to co-seed for another 6[ million]" or even having him and Cravatt invest $2 million each.

By July, Yu thanked Clarke for his "interests and faith in this endeavor" but asked Clarke to "bear with" him and to "[g]ive [him] some time to talk to [Cravatt] and other ventures to figure out what is [the] best path for this company." Yu informed individuals at Scripps that "we are still waiting for the best offer of investment" in CHange, "so please do not commit to [Clarke's investment company] anything yet."

By mid-August, Yu told Scripps' chief operating officer that he and Cravatt were "close to receiving an official offer" for a total investment of $100 million to "develop these [C-H activation] technologies broadly for a wide range of targets." So while Clarke "still has a chance" to be involved, it would "be on new terms" set by the new investors. That same day, someone at Scripps e-mailed Clarke that it had "received substantial inbound interest

5

for [Yu's] technology," so it was "not in a position to license the technology at this time."

In November, Clarke e-mailed Yu with the subject line "Reconnect?" and expressed his desire to "see if we can get back on track together." Yu responded that, as "indicated . . . in our previous communication, the business and financial plan [Clarke] proposed is just not going to be sufficient." But Yu "hope[d] [Clarke] will still be involved as one of the co-investors, but not the only one."

C.

The following spring, Plaintiffs sued Defendants and Scripps, who is not a party to this appeal. Against Defendants, Plaintiffs asserted claims for breach of oral joint venture agreement, breach of implied joint venture agreement, breach of fiduciary duty, promissory estoppel, and quantum meruit.

Defendants moved for summary judgment on all claims against them.

The trial court granted the motion. It found the joint venture claims failed for three reasons: (1) the agreement, whether oral or implied, was "barred by the statute of frauds"; (2) the parties "agreed to memorialize any agreement in writing"; and (3) "no mutual assent as to essential terms" was reached. The breach of fiduciary duty claim could not survive given the court's finding of "no enforceable joint venture agreement here." The court granted summary judgment on the promissory estoppel claim, an equitable claim, based on the availability of an adequate remedy at law. Lastly, it determined Plaintiffs' quantum meruit claim could not succeed because they "presented no evidence that they expected to be paid by Defendants."

After granting Defendants' motion for summary judgment, the court entered judgment in Defendants' favor.

6

A summary judgment motion serves to "cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)  Summary judgment is proper if no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)

"On appeal, we examine the record de novo, viewing the evidence in the light most favorable to the plaintiff as the losing party and resolving any evidentiary doubts or ambiguities in [the plaintiff's] favor." (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620.)  Even so, "plaintiff's evidence remains subject to careful scrutiny," and "uncorroborated and self-serving declarations" do not create a genuine issue of material fact. (*King*, *supra*, 152 Cal.App.4th at p. 433.)

We still presume the judgment is correct, so the " 'appellant has the burden of showing error, even if [the appellant] did not bear the burden in the trial court.' " (*GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1245.)  We will affirm summary judgment "if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120 (*Securitas*).)

### A.

Plaintiffs contend the statute of frauds does not bar their claims for breach of oral and implied by conduct joint venture agreement.  But we conclude it does as a matter of law.

A joint venture generally involves an agreement with a "commercial objective" under which the parties have (1) a joint interest in a common business, (2) an understanding to share profits and losses, and (3) a right of joint control. (*County of Riverside v. Loma Linda University* (1981) 118 Cal.App.3d 300, 313.) "Whether the parties to a contract have created a joint venture . . . depends upon their actual intention which must be determined in accordance with ordinary rules governing interpretation of contracts." (*Ibid.*)

"An agreement that by its terms is not to be performed within a year from the [agreement's] making" is subject to the statute of frauds, and thus it is invalid unless the agreement is in writing and "subscribed by the parties to be charged." (Civ. Code, § 1624, subd. (a)(1).)

1.

Plaintiffs argue the statute of frauds does not apply "to oral joint venture agreements like this one." In support, Plaintiffs rely on *Simpson v. Winkelman* (1964) 225 Cal.App.2d 746 (*Simpson*). There, the court rejected a claim that an oral agreement to dissolve an earlier agreement to share in the profits of the construction and sale of an apartment building was invalid because a joint venture agreement "need not be in writing under the statute of frauds but may be formed and dissolved by oral agreement and proved by parol evidence." (*Id.* at pp. 748-750.) Plaintiffs interpret *Simpson* as categorically exempting joint venture agreements from the one-year provision of the statute of frauds. We do not read *Simpson* so broadly. Although *Simpson* does not specify the ground on which the plaintiff invoked the statute of frauds, nothing in *Simpson* indicates it was based on the agreement's performance—which was to dissolve an earlier agreement— extending beyond one year. (*Ibid.*) Because "an opinion is not authority for a

8

proposition not therein considered" (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 (*Ginns*)), *Simpson* does not justify ignoring the statutory requirement to put in writing an agreement that, by its terms, cannot be performed in one year. (Civ. Code, § 1624, subd. (a)(1).)

Plaintiffs also claim that a joint venture implied by conduct "is by definition not subject to the statute of frauds." Yet this argument fails to persuade for the same reason. They quote a general statement of law that a joint venture " 'may be assumed as a reasonable deduction from the acts and declarations of the parties' " (*April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 819 (*April Enterprises*)), but as far as we can tell *April Enterprises* did not consider whether the terms of the agreement could be performed within one year. Consequently, it cannot be stretched to preclude applying that aspect of the statute of frauds here. (See *Ginns*, *supra*, 61 Cal.2d at p. 524, fn. 2.) And though Plaintiffs question when the statute of frauds would "even begin or end" for a joint venture formed by conduct over time, they acknowledge that the length of an agreement's *performance*, not the time it takes to reach that agreement, controls for statute of frauds purposes.

We have not found any case that expressly exempts from the statute of frauds an oral or implied joint venture that by its terms cannot be performed within a year. Several other states have held that "a joint venture that is to continue for more than a year is within the statute" of frauds. (9 Williston on Contracts (4th ed. 2025) § 24:1 [collecting cases].) We discern no reason why the same should not apply under our state law. We thus hold that oral and implied joint ventures are subject to the statute of frauds if the agreement, by its terms, cannot be performed within a year from its making. (Civ. Code, § 1624, subd. (a)(1).)

2.

We next conclude no genuine disputed issue of material fact exists as to whether this alleged joint venture agreement could, by its terms, be performed within one year because it would take longer than a year to develop the C-H activation technology underlying CHange. As a result, the statute of frauds renders both joint venture claims unenforceable, making summary judgment on those claims proper.

To start, Plaintiffs try to narrow the scope of the alleged joint venture agreement " 'to *create* CHange Pharma for the purpose of developing' Yu's technology." They then argue CHange could be—and was—created in under a year. But Clarke testified in deposition that "the purpose of the joint venture" was "to develop and ultimately commercialize" Yu's C-H activation technology.

The parties agree they contemplated multiple years of work. As Plaintiffs note, however, the focus is on whether developing and commercializing the C-H activation technology "cannot possibly" have been completed within one year. (*White Lighting Co. v. Wolfson* (1968) 68 Cal.2d 336, 343.)

Evidence shows the technology could not be developed within one year. Both Defendants submitted declarations attesting that "[d]eveloping and commercializing Dr. Yu's C-H activation technology could not be achieved in one year or less." So did another Scripps scientist involved in CHange who is not a party to this lawsuit. Plaintiffs seek to establish a triable issue of material fact by pointing to "[n]umerous witnesses" who they claim "testified it was possible to commercialize the technology in this space in less than a year." But in the testimony Plaintiffs cite, none of those witnesses said anything about it being possible to *develop* the C-H activation technology

10

within one year. To the contrary, the other Scripps scientist involved in CHange confirmed at deposition his understanding that " 'developing and commercializing Dr. Yu's C-H [a]ctivation technology would take well over a year' " based on his "past experience with many drugs and many companies." Because the alleged joint venture was to both develop *and* commercialize Yu's C-H activation technology, a lack of genuine dispute that *development* would necessarily extend beyond one year would suffice to trigger the statute of frauds despite any competing evidence about how long it would take to *commercialize* it. Because we ultimately conclude no genuine issue of material fact exists regarding it taking longer than one year to develop the C-H activation technology, we do not need to address the parties' arguments about paragraph 50 of Clarke's declaration, which covers aspects of commercialization.

Although the parties do not discuss it in the briefs, Clarke attested that CHange "could have (and did) develop Yu's technology in . . . less than a year, which had already been extensively researched and, indeed, that I understood was Yu's life's work." The statement sits untethered to either Clarke's experience or any evidence that development of the C-H activation technology was in fact completed. In his declaration, Clarke notes he has "helped launch numerous impactful biopharmaceutical companies," including Abide with Cravatt and Vividion with both Defendants. But he is silent about how long it took to develop the science or technology underlying those companies. As a result, that experience does not corroborate his statement that this C-H activation technology "could" be developed in less than a year. And Clarke testified he was "not qualified" to say what "C-H activation" was, beyond calling it "a technical chemistry matter," which calls into question his basis for opining how long it would take to complete developing it. Likewise,

11

the declaration offers nothing to corroborate Clarke's claim the technology was already developed within one year, particularly when he appeared to agree early on with Yu to develop a "full range" or "new generation" of this technology over multiple years. Mindful of the standard of review, we thus conclude this assertion is "uncorroborated and self-serving" such that it does not create a genuine issue of material fact. (*King*, *supra*, 152 Cal.App.4th at p. 433.)

Plaintiffs criticize Defendants' similar converse statements as "conclusory," but Cravatt laid foundation by attesting that the "process of developing and commercializing the science" and intellectual property underlying Abide and Vividion "took many years" and "could not have been completed in less than one year," and Yu said the same about Vividion. And Yu's firsthand research focusing on C-H activation supports his assertion that developing it "could not be achieved" within one year.

Plaintiffs also briefly contend "the work" could have been completed short of triggering the statute of frauds if CHange had " 'ceased' " within a year. (Citing *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 674 (*Foley*).) This one-sentence point is arguably forfeited as underdeveloped given the lack of supporting argument. (*In re Champion* (2014) 58 Cal.4th 965, 986.) In any event, it is unpersuasive. The "ceased" language comes from *Foley*'s description of an 1897 Massachusetts case in which the statute of frauds did not invalidate an oral agreement for permanent employment because " '[t]he contract would have been completely performed if the defendant [employer] had ceased to carry on business within a year.' " (*Foley*, at p. 674.) In that scenario, the agreement's terms—employment—would have been completed because the employee would have been employed until the business shut down. But Plaintiffs do not explain how CHange halting

12

operations would satisfy performance of the terms here, namely to develop and commercialize the C-H activation technology. Consequently, Plaintiffs fall short of their burden to convince us of error on this ground.

Lastly, in their reply brief, Plaintiffs for the first time claim the statute of frauds "cannot apply . . . because the fact that Clarke has 'fully performed all of his obligations under the contract operates to remove the bar of the statute.' " (Citing *Dutton v. Interstate Inv. Corp.* (1941) 19 Cal.2d 65, 70.) This argument is forfeited as untimely. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10.)

In the end, we are left with no genuine dispute that the C-H activation technology underlying CHange could not be developed within one year. As a result, the statute of frauds renders the joint venture agreement, whether oral or implied, unenforceable. Because we affirm summary judgment of the joint venture claims on this basis, we do not need to reach the other grounds raised by the parties.

### B.

The trial court granted summary judgment on the breach of fiduciary duty claim because it found "no enforceable joint venture agreement." Plaintiffs counter that this claim should survive summary judgment "regardless of whether the terms [of the joint venture] may be determined with 'exactness.' " (Citing *Boyd v. Bevilacqua* (1966) 247 Cal.App.2d 272, 288-289.) With this narrow focus on the (in)definiteness of the joint venture's terms, Plaintiffs do not address why an agreement invalidated under the statute of frauds can give rise to a fiduciary duty claim. Consequently, they have not met their burden to establish error on appeal.

An element of breach of fiduciary duty is "the existence of a fiduciary relationship." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811,

13

820.) Plaintiffs seek to establish this duty from the joint venture. But because we conclude above that the joint venture is unenforceable under the statute of frauds, the derivative fiduciary duty claim fails as a matter of law. (See *San Francisco Iron & Metal Co. v. American Milling & Industrial Co.* (1931) 115 Cal.App. 238, 248 ["The existence of the joint adventure being established, it follows that a fiduciary relationship between the coadventurers arose therefrom."].) Summary judgment on the fiduciary duty claim was thus proper.

## C.

Plaintiffs seek to revive their promissory estoppel claim. Defendants ask us to affirm summary judgment on this claim because, among other grounds, Plaintiffs have not presented evidence of any clear and unambiguous promise by Defendants. We agree with Defendants.

" '[A] promise is an indispensable element of the doctrine of promissory estoppel.' " (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044.) Promissory estoppel requires " 'that a promise had been made upon which the complaining party relied to [that party's] prejudice.' " (*Ibid.*) The promise must be " 'clear and unambiguous in its terms' " and cannot be established from " 'preliminary discussions and negotiations.' " (*Ibid.*)

Here, Plaintiffs claim Defendants promised to (1) "create CHange," (2) "provide the use of Scripps labs and post-docs," and (3) "work with Scripps to prosecute the patent." Plaintiffs also claim Yu promised to work with Clarke to "make CHange the 'biggest success.' "

To the extent these promises overlap with the joint venture agreement, they, too, are barred by the statute of frauds. (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 416 (*Granadino*).) To the extent these promises were part of a bargain, like Clarke obtaining equity when

14

creating CHange, promissory estoppel "is inapplicable." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249.)  Thus, a claim for promissory estoppel based on creating CHange fails as a matter of law.

Of the remaining promises, none were made by Cravatt.

We do not perceive any "clear and unambiguous" promise by Yu to Clarke.  As for providing use of laboratories and post-doctorate scientists, Yu e-mailed Clarke that some of his top post-doctorates "are very excited to help me build the libraries for the company.  So I think if you help equip the 10 man lab here, we may not even need to spend the extra 2 m[illion] for outside lab spaces."  As for working with Scripps to prosecute the patent, Plaintiffs offer a series of e-mails related to prosecuting a patent based on C-H activation.  While Clarke is included on the e-mails, the conversations are mostly directed to various patent attorneys involved in the patent application process.  None show Yu communicating specifically to Clarke, let alone making any clear or unambiguous promise to him.  As for making CHange the " 'biggest success,' " Yu e-mailed Clarke that "I look forward to working with you and [another proposed founder] to make this the biggest success.  Please bear with me and [g]ive me some time to talk to [Cravatt] and other ventures to figure out what is [the] best path for this company."  This communication is better categorized as a preliminary discussion or negotiation, not a clear and unambiguous promise.  It therefore cannot serve as the basis for a viable promissory estoppel claim.  (See *Granadino*, *supra*, 236 Cal.App.4th at p. 416.)

We affirm summary judgment on a different ground than the trial court, which we may do because the parties had an adequate opportunity to address it in the trial court.  (*Securitas*, *supra*, 197 Cal.App.4th at p. 120.)

15

And because we affirm summary judgment on this ground, we need not reach the others raised by the parties.

D.

The trial court granted summary judgment on the quantum meruit claim because "Plaintiffs presented no evidence that they expected to be paid by Defendants." Plaintiffs argue the caselaw "contains no such requirement" and regardless a triable issue of fact exists because Clarke "expected to be compensated in the form of a lucrative interest in a revolutionary new company." We disagree.

" 'Quantum meruit refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." ' " (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1049.)

"The burden is on the person making the quantum meruit claim to show the value of [the plaintiff's] services and that they were rendered at the request of *the person to be charged*." (*Miller*, *supra*, 162 Cal.App.4th at p. 1344, italics added.) Our Supreme Court has held quantum meruit permits recovery for the reasonable value of a plaintiff's services where the plaintiff justifiably relied on the "belief that *defendant* would pay for the requested performance." (*Earhart v. William Low Co.* (1979) 25 Cal.3d 503, 506, italics added.)

Plaintiffs assert Defendants "spent months requesting that Clarke perform services" like "prosecuting a patent application, preparing detailed business and technical plans, arranging meetings and travel, and even finding real estate and potential business partners." But Plaintiffs concede Clarke expected to be compensated "in the form of his interest in CHange, rather than payment from Yu or Cravatt." This concession dooms Plaintiffs'

16

quantum meruit claim as a matter of law.  (See *Miller, supra,*
162 Cal.App.4th at p. 1344.)  The trial court thus did not err in granting
summary judgment.

III.

We affirm the judgment.  Defendants are entitled to recover their
appellate costs.  (Cal. Rules of Court, rule 8.278(a)(1).)


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.


17