[No. A128875. First Dist., Div. Three. June 9, 2011.]

DONALD G. BELLOWS, Plaintiff and Appellant, v.
FREDERICK A. BELLOWS, as Trustee, etc., Defendant and Respondent.

COUNSEL

Anderson, Zeigler, Disharoon, Gallagher & Gray and Daniel E. Post for Plaintiff and Appellant.

Thomas F. Johnson for Defendant and Respondent.

OPINION

**POLLAK, J.**—Donald G. Bellows appeals from an order denying his motion to compel a further accounting by his brother Frederick A. Bellows, as trustee of a trust created by their mother. He contends the court erred in holding that he and Frederick entered an accord and satisfaction as to the amount of the final distribution of the trust that precludes the need for a further accounting. He argues that the release of liability Frederick purported to impose as a condition of accepting what Frederick asserted to be the final distribution violated Probate Code section 16004.5.[1] We agree and shall reverse the court's order.

### Factual and Procedural Background

In 2003, Beverly Bellows established the Beverly Bellows trust, naming her and Frederick as cotrustees. As restated in 2005, the trust provided that on

---

[1] All statutory references are to the Probate Code unless otherwise noted.

her death, the trust assets would be divided equally between Frederick and Donald. Following Beverly's death in 2008, Donald requested distribution of his share of the trust.

In September 2009, when the distribution had not been made, Donald filed a petition in the probate court pursuant to section 17200 seeking an accounting and distribution of the trust assets. On November 13, the court ordered Frederick to provide an accounting of the trust assets and to distribute one-half of the assets to Donald within 10 days. The order awarded Donald attorney fees in the amount of $9,800.

On November 27, Frederick mailed Donald's attorney a check for $30,376.80, which he represented was one-half of the trust assets. Accompanying the check was a document entitled "Final Trust Accounting," showing the total trust assets as of Beverly's death in December 2008 and income and expenses since that date. Donald's attorney returned the check with a letter claiming that the amount was insufficient because Frederick had improperly deducted from the remaining corpus of the trust approximately $13,000 of his own attorney fees prior to dividing the trust assets in half. The attorney stated that if the deduction was not deleted from the accounting and a new check issued within five days, he would file an objection to the accounting. Donald's attorney also requested documentation regarding a trust account that he believed contained $12,000 that was omitted from the accounting.

Frederick's attorney responded with a letter denying the existence of any additional trust accounts. He also explained why he believed the deduction for his attorney fees was proper. Nonetheless, he offered "to give Donald one-half of the fees actually paid by [the] trust, i.e., $6,718.25, provided there is no petition forthcoming soon . . . ."

Shortly thereafter, Frederick's attorney forwarded a check to Donald's attorney for $37,520.48, together with a letter advising that Donald is "authorized to negotiate the check when he has signed and returned the enclosed receipt of final distribution." The receipt included an acknowledgment that the payment represented "a final distribution of the trust estate." Donald cashed the check on December 23, 2009, but did not sign and return the receipt.

On February 23, 2010, Donald filed a motion to compel compliance with the court's November 2009 order. Donald sought an order "compelling trustee Frederick Bellows to provide a full and complete accounting within

ten (10) days, including sufficient documentation reflecting the activity on all sums in the original Beverly Bellows trust from June 2003 through her death in 2008 and until final distribution in November 2009" and that "a check be provided to Donald Bellows and his attorney within ten (10) days for one-half of any additions to the trust corpus not previously accounted for."

Frederick opposed the motion and filed a cross-motion for abatement and for attorney fees and sanctions. Frederick argued that the motion for a further accounting should be denied because Donald had cashed the check in full satisfaction of his claim for half the trust assets. He contended that the action should be abated because Donald's claims with respect to his management of the trust, while Beverly was alive, were pending in a civil action that Donald had filed against him in September 2009.[2] Frederick sought attorney fees and sanctions under Code of Civil Procedure sections 128, subdivision (a)(4), and 128.5.

On April 16, 2010, the court issued an order finding that by negotiating the check presented by Frederick, "Don agreed to the terms under which it was tendered, that is to say that Donald agreed that it was a final distribution of all assets of the trust and that Donald thereby effected an accord and satisfaction of all obligations that Fredrick owed under [the trust]." The court noted that "although it appears that Fredrick fully complied with this court's order of November 13, 2009, . . . it is not necessary to make that finding in light of the accord and satisfaction referred to above." The court awarded Frederick his attorney fees "for bringing this motion after accepting the accord and satisfaction referred to above." Finally, the court found pursuant to section 854 that the present action should be abated in favor of the civil action filed in September 2009. Donald filed a timely notice of appeal.[3]

---

[2] The civil action alleges causes of action for financial elder abuse, constructive fraud, undue influence, negligence, and infliction of emotional distress. The complaint alleges that in 2002 Beverly inherited a substantial estate from her brother and that Frederick, acting as trustee of his uncle's estate, improperly diverted the proceeds of that estate from Beverly's trust into a "Pay-on-Death" account for which he was the only beneficiary. The complaint also alleges that in approximately June of 2003, the Beverly Bellows Trust was funded with approximately $130,000 in fixed income assets and that "[t]hese sums have never appeared in any trust accounting provided by trustee Fred Bellows and the total amount of funding placed in the trust fund by Fred appears to total $55,000 only." The complaint suggests that Frederick concealed his mother's inheritance from his mother and used funds from the Beverly Bellows trust to pay Beverly's living expenses in order to enrich his inheritance.

[3] The court's order denying Donald's request to compel a further accounting and ordering attorney fees is appealable under section 1304, subdivision (a) and Code of Civil Procedure section 904.1, subdivision (a)(10).

## Discussion

### 1. *Accord and Satisfaction*

■ The requirements for an accord and satisfaction based on acceptance of a negotiable instrument are governed by California Uniform Commercial Code section 3311. "To obtain an accord and satisfaction under California Uniform Commercial Code section 3311, a debtor must prove that: '(1) [the debtor] in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument . . . .' [Citation.] If the debtor further proves that he accompanied the tender with a conspicuous statement that the amount was tendered as full satisfaction of the claim, and if the claimant does not prove that he tendered repayment of the amount within 90 days, the debt is discharged." (*Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 148 [110 Cal.Rptr.3d 159], fn. omitted; see also *Woolridge v. J.F.L. Electric, Inc.* (2002) 96 Cal.App.4th Supp. 52, 57–60 [117 Cal.Rptr.2d 771].) Donald suggests in a footnote that it is "doubtful" that these requirements were met, but he does not directly challenge the trial court's findings in support of an accord and satisfaction. Rather, he argues that section 16004.5 of the Probate Code, adopted in 2003, overrides California Uniform Commercial Code section 3311, and precludes the entry of an effective accord and satisfaction under the present circumstances. We agree.

Section 16004.5, subdivision (a) provides that "A trustee may not require a beneficiary to relieve the trustee of liability as a condition for making a distribution or payment to, or for the benefit of, the beneficiary, if the distribution or payment is required by the trust instrument." Subdivision (b) adds, "This section may not be construed as affecting the trustee's right to: [¶] . . . [¶] (2) Seek a voluntary release or discharge of a trustee's liability from the beneficiary. [¶] . . . [¶] (4) Withhold any portion of an otherwise required distribution that is reasonably in dispute. [¶] (5) Seek court or beneficiary approval of an accounting of trust activities."

There is no dispute that under the terms of the trust as interpreted by the court in its November 2009 order, Frederick was required to distribute to Donald one-half of the trust assets. Under the plain language of section 16004.5, subdivision (a), Frederick could not condition the payment on a release of liability. Frederick argues that the release was proper in this case because it "was not for a distribution required by the trust instrument but for a sum tendered to settle an unliquidated claim." However, while Frederick may have disputed Donald's right to receive half the amount paid by the trust for Frederick's attorney fees, or to receive any amount in excess of

$30,376.80, there was no dispute that Donald was entitled to receive from the trust at least $30,376.80, based on Frederick's own accounting. Frederick, as trustee, was required to make this distribution to Donald without any strings attached. He was not entitled to condition the payment on the release of other claims or demands of the trust beneficiary.

■ Frederick asserts that obtaining a release here was authorized by subdivision (b)(2) or (b)(5) of section 16004.5. Neither provision applies. Subdivision (b)(2) permits a trustee to seek a *voluntary* release or discharge. A release obtained as a condition of accepting payment to which the beneficiary is entitled is in no sense voluntary. Such an interpretation would render subdivision (a) entirely meaningless. ■ Subdivision (b)(5) permits a trustee to seek beneficiary approval of an accounting of trust activities; under this subdivision Frederick presumably could enter an agreement with Donald to resolve the attorney fee issue by distributing to Donald an agreed amount. However, Frederick could not condition such an agreement on Donald releasing his right to an accounting or of other claims he might have against the trustee. Again, such an interpretation would render subdivision (a) nugatory.

■ Subdivision (b)(4) confirms the right of the trustee to withhold any distribution that is reasonably in dispute. In such a case, as subdivision (b)(5) confirms, the trustee may seek instructions from the court, the well-established method of resolving controversies that may arise between trustee and beneficiary. (See § 17200, subds. (a), (b)(5) [trustee "may petition the court under this chapter concerning the internal affairs of the trust" including "Settling the accounts and passing upon the acts of the trustee, including the exercise of discretionary powers"].) What the trustee may not do is extract from the beneficiary an agreement to accept a compromise concerning a disputed issue as a condition of receiving a distribution to which the beneficiary is unquestionably entitled. A trustee may not under any circumstances condition a required distribution on an involuntary release of liability.

The legislative history confirms this interpretation of the statute. An analysis of the bill explains, "Existing law requires a trustee to administer a trust solely in the interest of the beneficiaries, and prohibits a trustee from dealing with trust property for the trustee's own profit. Thus it is likely that under existing law, a trustee could be held liable for requiring an exoneration from liability as a condition to making a distribution, as this action benefits the trustee rather than the beneficiary. However, the beneficiary may not always be willing or able to litigate the issue. [¶] The sponsor gives an example of a situation how this issue may arise without court oversight. In the example, a trust terminates January 1. On January 2, the trustee mails an agreement to the beneficiary which, if signed, would hold the trustee harmless for his or her actions as trustee. Trustee informs the beneficiary that upon

signing and returning the indemnification agreement, the beneficiary will receive the distribution required under the trust instrument. Even if the trustee has never accounted to the beneficiary as required under law, and even if the distribution is less than the beneficiary expected, the beneficiary may be placed in a situation where he or she believes that the cost of litigating the issue is greater than the potential gain. Thus a beneficiary may sign the agreement and accept the distribution as is and the issue of the propriety of the trustee's actions will never come before the court. This bill, by creating clear statutory direction on this issue, should help to prevent this situation from occurring." (Assem. Com. on Judiciary, Conc. in Sen. Amends. to Assem. Bill No. 1705 (2003–2004 Reg. Sess.) as amended June 26, 2003, p. 3.) The conditional distribution made by Frederick in this case is precisely the conduct the statute is designed to prevent.

▮ The court below thus erred in holding that Donald's acceptance of the check prevented him from challenging the accuracy of the accounting submitted by Frederick, as trustee. We shall therefore reverse the order denying Donald's motion to enforce compliance with the November 2009 order. Although the court indicated that Frederick already may have complied in full, it made no such finding and we are in no position at this point to evaluate that question. The probate court must in the first instance determine the sufficiency of Frederick's accounting and the merit of Donald's objections.

The court awarded Frederick attorney fees because Donald filed his motion after accepting the accord and satisfaction. In light of our rejection of the court's conclusion, the attorney fee order must also be reversed.

2. *Abatement*

▮ As noted above, the court's order also abated the probate proceedings under section 854 in favor of the pending civil action. Section 854 is located in part 19 of division 2 of the Probate Code, entitled "Conveyance or Transfer of Property Claimed to Belong to Decedent or Other Person." Part 19 is not further subdivided into chapters. Section 854 nonetheless provides in relevant part, "If a civil action is pending with respect to the subject matter of *a petition filed pursuant to this chapter* and jurisdiction has been obtained in the court where the civil action is pending prior to the filing of the petition, upon request of any party to the civil action, the court shall abate the petition until the conclusion of the civil action." (See also 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1144, p. 569 ["The Probate Code requires abatement of a petition relating to the conveyance or transfer of property claimed to belong to . . . a trust beneficiary or other person (Prob.C. 850, 854), when

a civil action with respect to the same subject matter is pending prior to the filing of the petition, and a party to the civil action requests the abatement."].) Despite the reference to petitions filed "pursuant to this *chapter*," the reference must be understood to mean any petition filed pursuant to part 19, in which the section appears.[4] Section 854 is not applicable here because Donald's petition was not filed under a section within part 19, but under section 17200 which appears in chapter 3 of part 5 of division 9 of the Probate Code. Section 17200 authorizes a "beneficiary of a trust [to] petition the court under this chapter concerning the internal affairs of the trust" including compelling the trustee to provide an accounting. (§ 17200, subds. (a), (b)(7)(C).) Thus, the court was not authorized by section 854 to abate the proceedings pending the outcome of the pending civil action.

Nevertheless, there undoubtedly is some overlap between issues that Donald has raised in this probate proceeding and the allegations in the civil action. On remand, we do not preclude the court from considering whether consolidation or another applicable procedural approach is appropriate to most effectively and efficiently adjudicate the common or related issues.

---

[4] Section 850, the operative provision in part 19, provides: "(a) The following persons may file a petition requesting that the court make an order under this part: [¶] (1) A guardian, conservator, or any claimant, in the following cases: [¶] (A) Where the conservatee is bound by a contract in writing to convey real property or to transfer personal property, executed by the conservatee while competent or executed by the conservatee's predecessor in interest, and the contract is one that can be specifically enforced. [¶] (B) Where the minor has succeeded to the interest of a person bound by a contract in writing to convey real property or to transfer personal property, and the contract is one that can be specifically enforced. [¶] (C) Where the guardian or conservator or the minor or conservatee is in possession of, or holds title to, real or personal property, and the property or some interest therein is claimed to belong to another. [¶] (D) Where the minor or conservatee has a claim to real or personal property title to or possession of which is held by another. [¶] (2) The personal representative or any interested person in any of the following cases: [¶] (A) Where the decedent while living is bound by a contract in writing to convey real property or to transfer personal property and dies before making the conveyance or transfer and the decedent, if living, could have been compelled to make the conveyance or transfer. [¶] (B) Where the decedent while living binds himself or herself or his or her personal representative by a contract in writing to convey real property or to transfer personal property upon or after his or her death and the contract is one which can be specifically enforced. [¶] (C) Where the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another. [¶] (D) Where the decedent died having a claim to real or personal property, title to or possession of which is held by another. [¶] (3) The trustee or any interested person in any of the following cases: [¶] (A) Where the trustee is in possession of, or holds title to, real or personal property, and the property, or some interest, is claimed to belong to another. [¶] (B) Where the trustee has a claim to real or personal property, title to or possession of which is held by another. [¶] (C) Where the property of the trust is claimed to be subject to a creditor of the settlor of the trust. [¶] (b) The petition shall set forth facts upon which the claim is based."

## Disposition

The order is reversed. Donald is to recover his costs on appeal.

McGuiness, P. J., and Jenkins, J., concurred.