Filed 1/27/14  Estate of Chamberlain CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| Estate of REXFORD CHAMBERLAIN, Deceased. | B245025 |
| SIDNE I. VENTLING,  Petitioner and Respondent,  v.  REX A. CHAMBERLAIN,  Objector and Appellant. | (Los Angeles County Super. Ct. Nos. BP103769, BP113282) |

APPEALS from orders of the Superior Court of Los Angeles County, Reva Goetz, Judge.  Affirmed.

Robert L. Kern and Russell A. Dalton, Jr. for Objector and Appellant.

Scott P. Schomer for Petitioner and Respondent.

_____

## INTRODUCTION

In this consolidated appeal concerning the administration of Rexford and Martha Chamberlain's trust and probate estates, appellant Rex Chamberlain appeals from orders requiring him to pay attorney's fees for counsel who represented respondent Sidne Ventling, the trustee and administrator, in connection with Ventling's petitions to deposit Rex's share of the estates with the Los Angeles County Treasurer. (See Prob. Code § 11851(b).)[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Decedents' Trust and Probate Estates

On June 24, 1994, Rexford and his wife, Martha, executed a declaration of trust, naming Rex as the successor trustee.[2] Martha died in May, 2001; Rexford died in October, 2001. The beneficiaries of the Chamberlain Trust were the children of the deceased trustors, namely, Rex, Ventling, and Linda Chamberlain. On December 1, 2008, Rexford's will, dated July 18, 2000, was admitted to probate. Rex was the named executor of the decedent's will, which provided for distribution to the trustee of the Chamberlain Trust.

Linda, having survived both trustors, died on April 13, 2005. Ventling was the administrator of Linda's estate. According to pleadings filed by Ventling, in the six years following the death of their father, Rex did nothing to administer their parents' trust and probate estates. As a result, in March, 2007, Ventling filed a petition to remove Rex as trustee and to require him to account for his administration of the estate. Rex opposed the petition. On October 8, 2008, Rex and Ventling resolved their disputes through mediation, which resulted in the removal of Rex as trustee. Rex and Ventling also

---

[1] Unless otherwise indicated, all further statutory references are to the Probate Code.

[2] Because some of the parties share the same last name, we refer to them by their first names for the sake of clarity only. No disrespect is intended. (See, e.g., *In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1073, fn. 1.)

reached a global settlement agreement, which provided for distribution of their parents' trust and probate estates to the two of them in equal shares.

Ventling was appointed successor trustee and executor, and for a time she administered the estate. On November 23, 2010, she filed a first and final account, and petition for distribution and allowance of compensation in the trust proceeding. That same day, Ventling also filed a first and final account and report, petition for allowance of statutory fees and commissions, and distribution under the will in the probate proceeding. Copies of the petitions and notices of hearing were mailed to Rex and his former attorney, Clark Byam, on November 29, 2010.

The hearing on the final account and petition for distribution of the trust estate was held on January 10, 2011. Ventling's counsel, Scott Schomer, attended the hearing; Rex did not appear or object in the probate court. The court approved the final accounting and granted Ventling and her attorney the requested fees. On January 19, 2011, the court signed an order settling Ventling's first and final account as successor trustee.

The final account and petition for distribution of the probate estate was submitted for decision on January 10, 2011. The court settled the final account and granted Ventling and her attorney the requested statutory fees in an order dated September 1, 2011.

On January 28, 2011, Schomer wrote a letter to Rex, enclosing a copy of the order of final distribution in the trust estate, a receipt for Rex's distributive share, and copies of two checks. The receipt of distribution stated: "The undersigned does hereby acknowledge receipt of reimbursement of costs advanced in the amount of $10,682.92, pursuant to settlement agreement, together with final distribution of the sum of $50,502.79, as his share of distribution after application of surcharges against his share as ordered by the court and as agreed upon by the settlement agreement."

On February 4, 2011, Schomer wrote a letter to Rex stating that he was enclosing a copy of the order of final distribution in the probate estate, a receipt for Rex's distribution share, and a copy of a check. The receipt of distribution stated: "The undersigned does hereby acknowledge receipt of the sum of $116,906.28, as his share of

3

distribution in the above entitled estate, pursuant to order of January 10, 2011." The letter was returned unclaimed.

On April 1, 2011, Rex wrote a letter to Schomer requesting payment of the amounts due to him under the trust and will. In his letter Rex expressed concerns about the accountings, estate taxes, and other matters. He also proposed an alternative to the receipts prepared by Schomer, stating: "We will sign the postal receipt for them, and the endorsement on the checks will be the best receipt for your records."

Schomer responded by letter on April 5, 2011, informing Rex that the court would not accept a signed postal return receipt or an endorsed check as a receipt for distribution. In his letter Schomer further indicated that Rex had failed to object to the accountings in a timely manner, as "copies of [the orders] were provided to [him] approximately three months ago"; hence, "the fiduciary [was] not obliged, at the cost of the estate, to present such material in support of the accountings." Schomer concluded the letter by stating that unless Rex signed the receipts, Ventling would petition the court for permission to deposit his distribution with the Los Angeles County Treasurer.

On September 7, 2011, Schomer called and then provided Byam with a copy of the order entered on September 1, 2011. On September 12, 2011, Byam informed Schomer by letter that he no longer represented Rex. Thereafter on September 14, 2011, Schomer wrote to Rex, enclosing a copy of the order settling Ventling's first and final account as executor. The letter reiterated that unless Rex signed the receipts, Ventling would petition the court to distribute his share of the estates to the County Treasurer. In his letter Schomer further stated that Ventling would seek to recover the attorney's fees and costs she incurred in bringing the petitions.

## 2. Ventling's Petitions To Deposit Rex's Share With the County Treasurer

On October 24, 2011, Ventling filed a petition for an order to deposit the estate property with the Los Angeles County Treasurer, and allowance of fees and costs to her attorney in both the trust and estate proceedings. Copies of the petitions and notices of hearing were mailed to Rex on October 26, 2011.

4

By January 12, 2012, Rex had obtained counsel, Robert Kern, who faxed a letter to Schomer that day, stating, "One matter which should be resolved without further difficulties is the question of the exchange of receipt(s) for check(s). As you probably recognize, my clients do not agree with the 'surplusage' which has been added to the proposed items prepared by your office. Those disagreements probably cannot be resolved, inasmuch as my clients do not agree with the statements included. However, the acceptance of the payment(s) and an appropriate receipt or receipts will present no problem." On January 26, 2012, Kern faxed another letter to Schomer requesting a response to his January 12, 2012 letter. Ventling filed supplements to the petitions on February 9, 2012.

The next day, the court held the first hearing on the petitions. The court asked if Kern was going to respond to the petitions, and Kern stated that he would. Kern further informed the court that neither he nor Rex had received Ventling's supplements to the petitions. The court then continued the matter to March 23, 2012, and ordered Schomer to fax the supplements to Kern no later than February 13, 2012, with any response or objections from Kern to be filed no later than March 2, 2012.

Ventling filed declarations supporting her requests for compensation in both the trust and estate proceedings on February 15, 2012. On March 2, 2012, Rex filed motions to strike the petitions, and for imposition of sanctions against Ventling and her attorney, and recovery of interest and costs.

The court continued the matter to April 20, 2012. On April 10, 2012, Ventling filed oppositions to each of the two motions to strike. Rex filed replies on April 13, 2012.

At the outset of the April 20, 2012 hearing, the court indicated that it did not know whether a motion to strike was the appropriate procedural vehicle for challenging Ventling's petitions, and continued, "The other thing is that the court needs to assume that what is being asserted is true and that the moving party refused to give a receipt for the property. Probate Code section 11850, subsection D, provides that the personal representative may deposit property to be distributed with the county treasurer of the

county in which proceedings are pending in the name of the distributee in any of the following cases:  And subsection…B says, 'The distributee refuses to give a receipt for the property,' and subsection D says, 'For any other reasons, the property cannot be distributed when the personal representative desires discharge.'"  The court then denied the two motions to strike, and further requested Kern to file his response by May 18, 2012.  The matter was continued to June 22, 2012.

On May 25, 2012, Rex filed responses and objections to the petitions, and requests for fees and costs in both proceedings.  On June 20, 2012, Ventling filed responsive declarations to each of the two responses and objections.

At the June 22, 2012 hearing, the court indicated its intention to grant Ventling's petitions and her requests for attorney's fees, inquiring of Kern, "Why don't I just authorize the distribution of the funds to the L.A. County Treasurer and then Mr. Chamberlain can do whatever he needs to do to get it?"  Kern responded by requesting an evidentiary hearing on "the claims of fees and the actions which have taken place by Mr. Schomer."  The court thereafter granted Kern's request, limiting the hearing to one hour.

**3.  The Evidentiary Hearing**

The court heard the matters on August 24, 2012.  On the morning prior to the hearing, Ventling filed hearing briefs in support of the petitions and requests for fees and costs in both proceedings.  At the hearing, Ventling submitted on the petitions and briefs.

During Schomer's testimony on direct examination, Kern sought to examine Schomer regarding the receipts of distribution presented in this case.  Schomer acknowledged that he had prepared the receipt in the trust matter, which he had then forwarded to Rex.  Kern inquired as to whether Schomer "felt that it was necessary" to include the particular language in that receipt, and Schomer answered, "Yes."  Kern further inquired as to the reason why Schomer felt those statements were necessary, and whether it was Schomer's conclusion that he "needed those statements to settle arguments which [Rex] might have had with regard to the amounts that were being paid."

6

Schomer objected to these questions based on the ground of "attorney-client [privilege] or work product," and in each case the objections were sustained by the court.

During his direct testimony, Schomer also testified that his requested fees in this case were not duplicative. Schomer explained that he had divided the time he spent "on everything" by three, charging one-third of his fees to the trust, one-third to the decedent's estate, and one-third to Linda's estate.

At the conclusion of the hearing, the court directed Ventling to file written verifications of her petitions no later than September 7, 2012, with the matter deemed submitted on filing of the verifications. Kern then orally requested a statement of decision, which the court denied, stating, "I'm not issuing a statement of decision, Mr. Kern. This matter lasted less than an hour. I will send out a minute order with regard to my rulings on the petition, and that's all that's required."

Ventling timely filed verifications and, on September 11, 2012, the court issued a minute order in each of the two matters in which it: (1) denied with prejudice Ventling's petition to deposit Rex's share of the estate with the Los Angeles County Treasurer; (2) granted Ventling's request for fees and costs ($5,645.00 in fees and $1,185.00 in costs); (3) granted Ventling's amended prayer in her responsive declaration to the response and objections, ruling that distribution could be made without interest and after payment of expenses and costs of the proceeding, by check from the client trust account of her counsel, and that the cancelled check would serve as a receipt; and (4) overruled Rex's response and objections to the petition.

Rex filed a timely appeal.

**DISCUSSION**

On appeal, Rex contends that the award of attorney's fees was unwarranted because the petitions did not have an appropriate basis at law. He also argues that the court erred in declining to issue a statement of decision, and that he was entitled to interest on the assets of both estates from the date of the orders of distribution.

## I. The Payment of Extraordinary Fees to Scott Schomer

Rex first asserts that the court had no legal authority to grant attorney's fees because the petitions did not have an appropriate basis at law.

### A. Standard of Review

Resolution of the issues in this appeal involves the application of several different standards of review. The determination of the basis for an award of attorney's fees is a question of law which an appellate court reviews de novo. (*Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 921.) The evaluation of the amount of the attorney fee award, however, is subject to the abuse of discretion standard. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 (*PLCM Group*)).[3] The proper standard of review for the allowance of extraordinary fees in a probate proceeding is also the abuse of discretion standard. (See, e.g., § 10811; Cal. Rules of Court, rule 7.703(a); *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1448 (*Gilkison*); *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) The decision of the trial court will be upheld on appeal if the decision of the trial court is fair and reasonable under all of the reasonable circumstances. Where there has been a factual finding that provides the basis for the ruling, the factual finding itself is subject to review under the substantial evidence standard. (*Estate of Griffith* (1950) 97 Cal.App.2d 651, 655 (*Griffith*).)

### B. The Court Had a Proper Basis To Award Attorney's Fees

The first issue presented is the legal basis for the probate judge's decision to award extraordinary fees to Schomer.

---

[3]     As stated in *PLCM Group*, *supra*, 22 Cal.4th at p. 1096, "'The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] … The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' [Citation.]")

### 1. Statutory Bases

Section 10810 governs the compensation of the attorney for the personal representative for conducting ordinary proceedings. That compensation, awarded out of estate assets, is based on a percentage of the dollar value of the estate. (*Miller v. Campbell, Warburton, Fitzsimmons, Smith, Medel & Pastore* (2008) 162 Cal.App.4th 1331, 1339 (*Miller*) ["A probate court must order compensation out of estate assets for routine probate services rendered by [the personal representative's] attorney."].) In addition to compensation for ordinary proceedings, Section 10811 gives the probate court discretion to allow additional compensation from estate assets "for extraordinary services by the attorney for the personal representative in an amount the court determines is just and reasonable." (§ 10811, subd. (a); *Miller*, *supra*, 162 Cal.App.4th at p. 1339.) This is known as an "extraordinary" fee. (*Gilkison*, *supra*, 65 Cal.App.4th at p. 1446, fn. 1.) Examples of extraordinary services for which an attorney may be entitled to extraordinary fees are set forth in California Rules of Court, rule 7.703. One such service is litigation in support of an attorney's request for extraordinary compensation. (See, e.g., *Estate of Trynin* (1989) 49 Cal.3d 868 (*Trynin*) [attorney's fees incurred in defending an attorney's fee claim are chargeable against the estate].)

An attorney is not ordinarily entitled to compensation in advance of the final distribution of the estate unless good cause is shown. (§ 10832.) However, Section 10832 provides that "the court may allow compensation to the personal representative or to the attorney for the personal representative for extraordinary services before final distribution when any of the following requirements is satisfied: ¶ (a) It appears likely that administration of the estate will continue, whether due to litigation or otherwise, for an unusually long time. ¶ (b) Present payment will benefit the estate or the beneficiaries of the estate. ¶ (c) Other good cause is shown." (*Ibid*.)

Further, Section 11850 states: "Subject to Section 11851, the personal representative may deposit property to be distributed with the county treasurer of the county in which the proceedings are pending in the name of the distributee in any of the following cases: ¶ (a) The property remains in the possession of the personal

9

representative unclaimed or the whereabouts of the distributee is unknown. ¶ (b) The distributee refuses to give a receipt for the property. ¶ (c) The distributee is a minor or incompetent person who has no guardian, conservator, or other fiduciary to receive the property or person authorized to give a receipt for the property. ¶ (d) For any other reason the property cannot be distributed, and the personal representative desires discharge."

### 2. The Petitions

According to Ventling's petitions, Rex's share of the estates could not be distributed because he had "refused to give a receipt for the property." Ventling, therefore, filed the petitions seeking orders to deposit Rex's share of the estates with the Los Angeles County Treasurer under subdivision (b) of Probate Code section § 11851. Copies of the orders settling Ventling's first and final accounts as successor trustee and executor, as well as all the correspondence from January 28, 2011 to September 14, 2011, were attached as exhibits to the petitions.

In the petitions, Ventling also requested attorney's fees and costs expended in bringing the petitions. In seeking authorization to pay Schomer's fees, Ventling was requesting "extraordinary" compensation from the estate. (§ 10811(a); 10832(a).) The supplements filed by Ventling explained that "the services rendered and costs expended [were] necessary" to terminate the trust and probate proceedings, and had been "incurred as a result of the direct refusal of the distributee to exchange a receipt for a distribution check."

When the court considered the petitions, it impliedly found that the services performed by Schomer fell within the ambit of extraordinary duties and resulted in benefit to the estate. (See *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977-978 ["A judgment or order of the trial court is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent."].)

Rex argues that because the court denied the petitions "with prejudice," it "implicitly recognized" that Rex's failure to sign the receipts did not provide a basis upon which to grant the relief prayed for in the petitions. According to Rex, "no beneficiary of

10

a trust [should] be required to sign any receipt beyond the mere acknowledgment of the specific sum paid." In support of his argument, however, Rex relies on a case that is distinguishable from the case at hand, *Bellows v. Bellows* (2011) 196 Cal.App.4th 505 (*Bellows*).)

In *Bellows*, the trustee distributed half of the trust assets to the beneficiary as required by the trust; however, the parties disputed whether the trustee had properly charged his own attorney's fees against the beneficiary's share prior to dividing the trust assets. (*Bellows*, 196 Cal.App.4th at p. 508.) The trustee subsequently forwarded a check to the beneficiary that represented one-half of the fees actually paid by the trust, with a receipt that included an acknowledgment that the payment represented "a final distribution of the trust estate." (*Ibid.*) When the beneficiary filed a petition for an order requiring the trustee to provide an accounting, the trustee opposed the motion and argued that the beneficiary had cashed the check in full satisfaction of his claim for half the trust assets. (*Id.* at pp. 508-509.) Ultimately, the appellate court held that under subdivision (a) of Section 16004.5, the trustee was prohibited from conditioning a distribution or payment to the beneficiary upon the beneficiary's release of him, and thus could not treat the payment of the amount due as an accord and satisfaction with respect to the disputed amount. (*Id.* at pp. 510-511.)[4]

*Bellows* is distinguishable from this case because Ventling did not require a release of liability as a condition of Rex's agreement. The receipts Ventling prepared only included an acknowledgment that the payment represented Rex's share of distribution, "after application of surcharges against his share as ordered by the court and as agreed upon by the settlement agreement" (in the trust matter), and "pursuant to order of January 10, 2011" (in the probate matter).

In his brief, Rex also argues that "from the petition and the exhibits attached, it is clear that the moving party did not refuse to sign receipts but rather contested the

---

[4] "A trustee may not require a beneficiary to relieve the trustee of liability as a condition for making a distribution or payment to, or for the benefit of, the beneficiary, if the distribution or payment is required by the trust instrument." (§ 16004.5, subd. (a).)

11

statements which were included in the receipts and the stated basis for making the payments." The undisputed evidence, however, shows that prior to Ventling's filing of the petitions, Rex neither signed the receipts submitted by her counsel, Schomer, nor requested that they be modified. Rather, Rex's April 1 letter merely told Schomer that a signed postal return receipt and an endorsed check "[would] be the best receipt for [his] records." It was not until January 12, 2012, three months after Ventling filed the petitions, and one year after the hearings on the final accounts were held, that Kern wrote to Schomer with an offer to sign receipts that "simply state[d] the amount which [was] being paid and acknowledged."

In the absence of any other relevant documents or legal arguments as to why the petitions did not have an appropriate basis in law, Rex has failed to demonstrate error.

## C. The Court's Decision to Award Extraordinary Fees and the Determination of the Amount Awarded Did Not Constitute An Abuse of Discretion

Rex next contends that the court erred in allowing fees for extraordinary services.

### 1. Applicable Law

Services that are not involved in the typical probate case, commonly known as "extraordinary" services, may be paid out of the estate assets at the discretion of the probate court. (*Estate of Hilton* (1996) 44 Cal.App.4th 890, 894-895.) The award of those fees is addressed to the sound discretion of the probate court. (§ 10811, subd. (a); *Trynin*, *supra*, 49 Cal.3d at pp. 873-874; *PLCM Group*, *supra*, 22 Cal.4th at p. 1096.) "In fixing the amount of extraordinary compensation for the executor and its attorneys the court could properly consider not only the time spent but also such factors as the value of the estate, the skills exercised, the amount in dispute, and the results obtained." (*Estate of Beach* (1975) 15 Cal.3d 623, 645.)

Extraordinary attorney's fees are permitted only if (1) the attorney services were "necessary" for the administration of the estate; (2) the attorney services resulted in any unusual benefit to the estate; or (3) the executor's improper motives resulted in the attorney services. (*Estate of Silva* (1938) 29 Cal.App.2d 52, 55; *Estate of Downing*

12

(1982) 134 Cal.App.3d 256, 267-268; *Estate of Fulton* (1937) 23 Cal.App.2d 563, 567.)
Our task is to determine whether there is any substantial evidence to support the
allowance made by the court. (*Griffith*, *supra*, 97 Cal.App.2d at p. 655.)

### 2. Analysis

Here no abuse of discretion was shown. The court had before it the entire record
of the proceedings in the administration of the estates. The record also shows that the
court did not misunderstand the law with respect to extraordinary fees.

As to the request for extraordinary compensation for her counsel, Ventling's
responsive declarations explained that the receipts were prepared "[b]ecause of [Rex's]
failure, in the Santa Clara probate [of the estate of Linda], to negotiate a $90,000.00
preliminary distribution check for a substantial period of time, resulting in the check
being denied payment by the bank when it was ultimately presented, thereby requiring re-
issuance of a cashier's check in place thereof." At the evidentiary hearing, Schomer
testified concerning the necessity of the petitions. When Kern specifically inquired as to
whether it was Schomer's "contention that [his] billings with regard to these three cases
[was] something that was appropriate and needed," Schomer answered, Yes."

There was further testimony by Shomer that his requested fees in this case were
not duplicative. Schomer stated that he had divided the time he spent "on everything" by
three, charging one-third of his fees to each estate, including Linda's estate. Schomer
and Ventling also submitted copies of billing invoices, setting forth the specific tasks
performed and the time spent on each. In response to inquiries from Kern challenging
specific portions of the bills, Schomer explained, "One of the things that's not described
in here is you just don't snap your fingers and write a motion. I, in my two decades of
practice, had never had a client or a beneficiary refuse to accept a distribution. I had to
spend time researching the law, understanding what the authority was, citing cases, going
through the history of the file. So all that is included in there."

13

Rex testified that the requested fees were "outrageous," duplicative, and unnecessary. Credibility was a question for the probate court. (See, e.g., *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622-623.)

In sum, Rex has presented no factual or legal argument demonstrating the court's order exceeded the bounds of reason. At most, he demonstrated the court disagreed with his position.

## II. Statement of Decision

Rex also claims the court committed reversible error when it denied his counsel's oral request at the evidentiary hearing for a statement of decision. (See *Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 127 [failure to issue statement of decision upon request under § 632 is reversible error].)

Code of Civil Procedure section 632 requires a statement of decision to be rendered upon "the trial of a question of fact" by the court. (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040.) Courts have consistently construed the statute as generally not requiring a statement of decision on a motion, even when the motion involves an evidentiary hearing and the order on the motion is appealable. (*Ibid.*; *Gruendl v. Oewel Partnership, Inc.* (1997) 55 Cal.App.4th 654, 660; *In re Marriage of Simmons* (1975) 49 Cal.App.3d 833, 836-837.)

Because the proceeding on Ventling's petitions and requests for attorney's fees was not a trial and was not followed by a judgment, the court was not required to issue a statement of decision. Rex argues that "notwithstanding the limited time allowed, this hearing required decisions by the court upon two probate petitions, which if not called a 'trial' are nevertheless the equivalent of a trial." He provides no authority for this position.

Nonetheless, the court filed a written "Ruling on Submitted Matter" for each estate. In the minute orders, the court set forth its findings on the factual issues of attorney's hours and rates. Specifically, the minute order entered in the trust proceeding awarded Ventling's counsel $3,195 in attorney's fees, based on 9.13 hours of attorney

14

time at the rate of $350 per hour, plus $395 in costs, $2,450 in "additional fees," and $790 in "additional f[i]ling fees." The minute order entered in the probate proceeding awarded Ventling's counsel $3,195 in attorney's fees, based on 9.13 hours of attorney time at the rate of $350 per hour, plus $395 in costs, $2,450 in "additional fees," and $790 in "additional costs." Moreover, the transcribed record of the hearings establishes that the court's grant of attorney's fees was based on the legal conclusion that they constituted extraordinary fees.

## III. The Entitlement to Interest

Finally, Rex argues that he was entitled to interest on the assets in both estates for the period of time that Ventling failed to distribute the assets.

The law does not support his position. In *Estate of Kampen* (2011) 201 Cal.App.4th 971, a beneficiary claimed that the personal representative had failed to timely administer the estate, entitling it to "the full value of all undistributed assets of the estate plus interest from the date of the [] order through the date of distribution of all the assets." (*Id.* at p. 980.) The appellate court disagreed, however, holding that a probate order of distribution is not a "money judgment" entitling a beneficiary to interest under Code of Civil Procedure section 680.270. (*Id.* at pp. 986-987) Nor is it a judgment awarding "damages certain," which would allow a beneficiary to recover prejudgment interest under Civil Code section 3287(a). (*Id.* at pp. 989-990.) According to the court in *Kampen*, even if the subject of the distribution is cash, the order is not a "judgment that 'requires the payment of money.' [Citation.] Rather, it is a judgment distributing assets." (*Id.* at pp. 986-987.)

Rex argues that *Kampen* is distinguishable because "[t]here was a court order and the actions of [Ventling] and her attorney clearly violated the terms of Probate Code section 16004.5(4)." As discussed above, Probate Code section 16004.5 is inapplicable to the present case because the receipts prepared by Ventling did not seek a release from Rex as a condition of distribution. We find no error in the probate court's determination.

15

**DISPOSITION**

The orders are affirmed.

ZELON, J.

We concur:

PERLUSS, P. J.

SEGAL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.